# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00720-NYW

SILO ROMERO,

     Plaintiff,

v.

HELMERICH & PAYNE INTERNATIONAL DRILLING CO,

     Defendant.

---

## ORDER ON MOTIONS IN LIMINE

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Plaintiff Silo Romero's ("Plaintiff" or "Mr. Romero") Ominbus Motion in Limine, [#79, filed June 30, 2017] and Defendant Helmerich & Payne International Drilling Co.'s ("Defendant" or "H&P") Omnibus Motion in Limine [#78, filed June 30, 2017].  The Motions are before the court pursuant to the Order of Reference dated July 13, 2015 [#24], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2.  The court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law.  For the following reasons, both Motions in Limine are **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

     Mr. Romero commenced this action on December 24, 2014, by filing a Complaint in the state District Court for Mesa County, Colorado.  [#5]  Plaintiff asserts one claim for wrongful discharge in violation of public policy, and alleges that he was terminated from his employment with H&P in retaliation for seeking workers' compensation benefits for lost wages incurred after an on-the-job injury.  H&P contends that Mr. Romero voluntarily resigned.

On April 7, 2015, H&P removed the action to this court asserting jurisdiction pursuant to 28 U.S.C. § 1332 on the basis that Plaintiff is a Colorado citizen, H&P is a citizen of Delaware, and the amount in controversy exceeds $75,000. *See* [#1].[1] H&P filed its Answer from the state court docket the same day. *See* [#7]. On July 16, 2015, the court held a Scheduling Conference and set various pre-trial dates. *See* [#25, #26].

On June 6, 2016, H&P filed a Motion for Summary Judgment. [#38]. On August 5, 2016, after the Motion was fully briefed, the court held a hearing and took the matter under advisement. *See* [#47]. On October 13, 2016, the court denied the Motion for Summary Judgment. *See* [#54]. The court held a Final Pretrial Conference the same day and issued a Final Pretrial Order, setting a five-day jury trial to begin May 1, 2017. [#55, #56]. The court thereafter held a Status Conference to discuss Plaintiff's request that the trial be held in Grand Junction, Colorado or, in the alternative, that the court permit various treating medical providers located on Colorado's Western Slope to testify by video conference from the Grand Junction courthouse. *See* [#62, #67]. Upon request of the Parties, the court additionally vacated the May 1 start date and reset the trial for August 14, 2017. On April 3, 2017, the court entered an Amended Final Pretrial Order [#71] and a Trial Preparation Order [#72].

On June 30, 2017, the Parties filed their respective Motions in Limine. [#78, #79]. The same day, Plaintiff filed his designation of deposition testimony. [#81]. On July 7, 2017, Defendant filed counter designations, [#81], and, on July 11, it filed a Response to the Motion in Limine. [#82]. On July 21, 2017, Plaintiff filed his Response to the Motion in Limine. [#98]. The Trial Preparation Conference is set for August 7, 2017.

---

[1] H&P asserted in its Notice of Removal that while Plaintiff filed his Complaint on December 24, 2014, the amount of damages claimed was not clear until March 20, 2015, when Defendant received Plaintiff's Initial Disclosures identifying over $1,200,000 in economic damages. [#1 at ¶ 6].

## ANALYSIS

Motions in limine exist outside of the Federal Rules of Civil Procedure and Federal Rules of Evidence and serve to enable the court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline,* 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996) (further citations omitted)). Pre-trial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the parties as they prepare their cases. However, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (citing *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard [of clearly inadmissible], evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.")).

## I.      Mr. Romero's Motion in Limine

Plaintiff asks the court to preclude during trial the admission of evidence, and associated argument, regarding the unemployment benefits he received under Colorado and Wyoming law. *See* [#79]. He also asks the court to exclude argument regarding or reference to redactions in his records. [*Id.*].

### A.      Evidence of Unemployment Benefits

Mr. Romero asks the court to exclude "evidence of, and argument regarding, the fact that [he] filed claims for unemployment benefits, had hearings on such claims, filed appeals regarding such claims, received unemployment benefits for certain time periods, and any other similar evidence which would notify the jury that [he] sought unemployment benefits" under the

laws of Colorado and Wyoming.  [#79 at 3].  Defendant concedes that "finding[s] of fact or law, judgment, conclusion, or final order" rendered in an unemployment proceeding are inadmissible as evidence, but argues that the simple fact that Mr. Romero filed for unemployment benefits is admissible.  [#82 at 2-3].  Defendant further argues that the documents Mr. Romero supplied and the testimony Mr. Romero gave in pursuing unemployment benefits, as well as the testimony other H&P employees provided, constitute admissible evidence for the purposes of impeachment and rehabilitation at trial.  [*Id.* at 3].

1. *Applicable Law*

As the Parties note, both Colorado and Wyoming law state that findings of fact, conclusions of law, final orders, and decisions or final judgments in unemployment proceedings are not admissible as evidence "in any separate or subsequent action or proceeding in another forum."  Colo. Rev. Stat. § 8-74-108.  *See also* Wyo. Stat. Ann. § 27-3-406; *Hart v. Dillon Companies, Inc.*, No. 12–cv–00238–RM–DW, 2014 WL 6819724, at *4 (D. Colo. Dec. 3, 2014).

Rule 401 of the Federal Rules of Evidence advises that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401(a)-(b).  The court may nonetheless exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *Id.* at 403.

Rule 613 governs scenarios in which a witness's prior statements are implicated.  The Rule allows admission of extrinsic evidence of a witness's prior inconsistent statement "only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."  Fed. R. Evid. 613(b).

This subsection of Rule 613 does not apply to Rule 801(d)(2), which governs statements offered against an opposing party. Under Rule 801(d)(2), in relevant part, an opposing party's statement offered against the opposing party is not hearsay if it "was made by the party in an individual or representative capacity." Similarly, a declarant or witness's prior statement is not hearsay if the declarant/witness testifies and, subject to cross-examination about the prior statement, the statement "is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid. 801(d)(1)(A). Additionally, the declarant or witness's prior statement is not hearsay if, subject to cross-examination about the prior statement, the statement is consistent with the declarant/witness's testimony and is offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying," or "to rehabilitate the declarant's credibility as a witness when attacked on another ground." *Id.* at 801(d)(1)(B).

### 2. *Application*

Neither Party engages in an analysis under Rules 401 and 403 as to the relevance of evidence that Plaintiff applied for unemployment benefits, or prejudice associated with that evidence; they simply argue respectively that the evidence may, or may not, be admitted pursuant to the statutes. I agree with Defendant that nothing in the plain language of either statute precludes evidence of the fact that a person sought unemployment benefits, and this court similarly found no authority to imply such a limitation. "A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on all potential grounds." *Cook v. Peters*, No. 13-cv-107-GKF-FHM, 2015 WL 10986407, at *1 (N.D. Okla. Jul. 30, 2015) (citing *Koch*, 2 F. Supp. 2d at 1388).

I find that Plaintiff has not met his burden in asking the court to preclude all "evidence of, and argument regarding, the fact that [he] filed claims for unemployment benefits, had hearings on such claims, filed appeals regarding such claims…," and I deny the request. [#79 at 3]. However, I grant the Motion in Limine to the extent it seeks to preclude evidence of the results of Mr. Romero's applications and results of the subsequent hearings and appeals, as evidence of such would implicate the type of findings, conclusions, orders, and decisions barred by the statutes.

With respect to Defendant's assertion in its Response that testimony from unemployment proceedings is admissible for the purpose of impeachment and rehabilitation, the court defers its ruling until such a time as the issue is ripe. The court may deny a motion in limine when it "lacks the necessary specificity with respect to the evidence to be excluded," and denial of the motion "does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *Koch*, 2 F. Supp. 2d at 1388 (citations omitted). In his Motion in Limine, Plaintiff did not specifically address the admissibility of testimony that he and other H&P employees offered during his unemployment proceedings. *See generally* [#79 at 1-3]. He stated only that he is not seeking to preclude facts regarding his employment with Defendant or his work related injury simply because those facts "were cited in the underlying unemployment claims, hearings, or appeals." [*Id.* at 2]. I decline to craft an argument for exclusion on Plaintiff's behalf.[2] I also decline to speculate as to what evidence may come in, or affirmatively allow evidence of the testimony before the matter of impeachment or rehabilitation has even arisen. *See Koch*, 2 F. Supp. 2d at 1388 ("the court believes the better practice is to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there") (citing

---

[2] The court did not contemplate that either Party would file a reply in support of his and its respective Motions in Limine. *See* [#72 at 4].

*Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir.), *cert. denied,* 423 U.S. 987 (1975); *Hunter v. Blair,* 120 F.R.D. 667 (S.D. Ohio 1987)). *See also Farrier v. Nicholson*, No. CIV-06-825-D, 2008 WL 4186217, at *2 (W.D. Okla. Sept. 9, 2008) ("The relevance and admissibility of evidence related to Plaintiff's unemployment compensation claim that does not reflect OESC findings will be determined at trial upon Defendant's contemporaneous objection"). Should Defendant find during trial that the use of testimony given during the unemployment proceedings is necessary so as to impeach or rehabilitate, and Plaintiff objects to the admissibility of such evidence, the court will determine the issue at that time within the context of the trial pursuant to the applicable Federal Rules of Evidence.

    B. <u>Reference to Redactions</u>

Mr. Romero next asserts that certain trial exhibits are redacted, and that the redactions primarily concern his medical and worker compensation records and protect private information such as his Social Security number. He asserts the redactions also concern information protected by the attorney-client privilege, for which Plaintiff provided a privilege log. [#79 at 3-4]. Plaintiff asks the court to preclude "testimony referencing, or attorney argument regarding, the redactions in the records." [*Id.*] H&P agrees that "certain personally identifiable information, including social security numbers," is properly subject to redaction, but argues that the jury "should be informed about the redactions to avoid confusion, and factual, nonargumentative references to such information present no prejudice to Mr. Romero." [#82 at 5]. Defendant does not appear to argue that its counsel is entitled to reference the substance of the redacted information, nor does Defendant contend that the redactions, or Plaintiff's use of privilege, are improper. Defendant responds only that, absent explanation, the jury could speculate as to the redactions and form improper conclusions. Thus, Defendant asks the court to "instruct the jury

at the outset of trial that redactions have been made in certain documents to protect personally identifiable information and that the jury should not speculate regarding the redacted information but, instead, decide the factual issues in this case based on the evidence admitted." [*Id.*]

From the briefing, it appears that the Parties agree that argument or commentary during trial regarding the substance of privileged information, or speculation as to that information or the basis for the privilege, is inappropriate. Accordingly, the court grants the Motion in Limine as to argument or commentary regarding both Plaintiff's use of redactions and the information that is redacted. The court will also instruct the jury, preliminarily, that some redactions to documents have been made and that the jury should not speculate as to what has been redacted. To the extent Plaintiff is not amenable to Defendant's proposed instruction contained in its Response, *see* [#82 at 5], the Parties are directed to submit, no later than **August 3, 2017**, a proposed preliminary jury instruction with respect to redactions. The Parties shall describe in their submission any dispute over the proposed instruction, and this court will resolve any dispute at the Final Pretrial Conference on **August 7, 2017**.

For the foregoing reasons, Plaintiff's Motion in Limine is **GRANTED IN PART** and **DENIED IN PART**.

## II.     H&P's Motion in Limine

Defendant asks the court to preclude or limit during trial the admission of three types of evidence: certain opinions offered by Plaintiff's rebuttal vocational expert; the predominance of Plaintiff's medical experts; and the criminal history of Plaintiff's supervisor at the time his employment with Defendant ended. *See* [#78]. I address these arguments seriatim.

A. <u>Opinions of Garry Wolf</u>

Defendant asks the court to preclude vocational expert Garry Wolf ("Mr. Wolf") from testifying as to certain opinions it contends were improperly raised for the first time during Mr. Wolf's May 27, 2016 deposition and after Defendant's counsel had concluded his primary examination of Mr. Wolf. [#78 at 1]. Defendant asserts that Plaintiff's counsel presented new documents to Mr. Wolf during cross-examination and solicited new opinions, and that neither the documents nor the associated opinions were included in Mr. Wolf's May 5, 2016 rebuttal expert report. Defendant further contends that Plaintiff's counsel used the documents to solicit opinions from Mr. Wolf "about the specifics of various job requirements on oil and gas rigs and Plaintiff's physical ability to satisfy those requirements." [#78 at 4]. Defendant argues that Mr. Wolf's testimony in response is neither harmless nor justified, and that Mr. Wolf was "not even generally endorsed to opine on quasi-medical opinions." [*Id.* at 5].

Plaintiff responds that he endorsed Mr. Wolf as a rebuttal expert in response to Defendant's disclosure of Cynthia Bartmann, and that the documents in question were introduced during the May 11, 2016 deposition of medical expert Erica Herrera, MS, PA-C ("Herrera documents"). [#98 at 2]. Plaintiff further states that the Herrera documents were in Defendant's possession since at least September 25, 2015, when Plaintiff provided them in his first supplemental disclosures. [*Id.* (citing #78-3)]. Thus, Plaintiff asserts, the documents were available to Ms. Bartmann when she prepared her report on March 29, 2016. Additionally, in preparing his rebuttal report, Mr. Wolf reviewed the summary of medical records that Ms. Bartmann had relied on, which included "documentation from Erica Herrera, MS, PA-C." [*Id.* (citing #98-1 at 2, #98-3)]. Mr. Wolf subsequently examined the Herrera documents, which were introduced during her deposition. Plaintiff asserts that later, during Mr. Wolf's deposition,

Plaintiff's counsel asked him "whether [those] documents were consistent with Mr. Wolf's previously expressed opinion that Mr. Romero 'could perform the job functions of an oil production motorman from December 28, 2012 through August 29, 2013,'" and if so, why. [*Id.* (*comparing* #98-4 at 2 *with* #78-2 at 54:14-58:11)]. Plaintiff argues that Mr. Wolf's opinion was not medical in nature, but rather his assessment of Plaintiff's "capacity to work given the information ascertained and opinions expressed by his medical providers." [*Id.* at 3].

      1. *Applicable Law*

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Under the Rule, a party must disclose to the other parties the identity of any witness he or she may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Fed. R. Civ. P. 26(a)(2)(A). The disclosure generally must be accompanied by a written report for any witness who is retained or specially employed to provide expert testimony in the case. *Id.* at 26(a)(2)(B). In relevant part, the report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." *Id.* at 26(a)(2)(B)(i)-(iii). "A party is under a continuing duty to supplement the expert report if there are additions or changes to what has been previously disclosed." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (citing Fed. R. Civ. P. 26(a)(2)(C), 26(e)(1)). A party who fails to disclose or supplement information required under Rule 26(a) is not allowed to use that information to supply evidence at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The district court, in its discretion, may strike an expert report or preclude expert opinions for failing to comply with Rule 26(a). *Woodworker's Supply, Inc. v. Principal Mut. Life*

*Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999). In exercising its discretion, the court should consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

### 2. *Application*

The court agrees with Defendant that Plaintiff cannot supplement Mr. Wolf's opinion through his deposition, and that the failure to disclose his consideration of and reliance upon the Herrera documents is neither justified nor harmless. Mr. Romero acknowledges the subject documents were in his possession as of September 2015, when he disclosed them to Defendant in his supplemental initial disclosures, and identifies no reason why his own expert, Mr. Wolf, could not have accessed those materials well before the deadline for his expert report—regardless of whether Ms. Bartmann relied upon them or whether they were used in P.A. Herrera's deposition. Mr. Wolf's rebuttal expert report is dated May 5, 2016, *see* [#98-4], and thus he had ample time to consider the Herrera documents in preparing his expert opinions.

Plaintiff further asserts any failure to disclose is harmless because Ms. Bartmann referenced the subject documents as "documentation from Erica Herrera, MS, PA-C" in her expert report that Defendant disclosed to Plaintiff on March 29, 2016. To the extent this general reference includes the Herrera documents, Plaintiff again provides no justification for why Mr. Wolf did not consider or identify the documents as part of his May 5 rebuttal report that he served over a month later. Even assuming that the Herrera documents first came to the attention of Mr. Wolf after P.A. Herrera's deposition, over two weeks passed between P.A. Herrera's deposition and Mr. Wolf's deposition, and Plaintiff did not proffer a Rule 26(e) supplement to

Mr. Wolf's rebuttal report during that time. Nor has Mr. Wolf supplemented his rebuttal report in writing since that time. Nor does Plaintiff offer an explanation for why Mr. Wolf opined for the first time during his deposition, in response to Plaintiff's counsel's questions, that the Herrera documents support his opinion.

Plaintiff additionally asserts that the untimely disclosure of supplemental opinions is harmless because Mr. Wolf is not proffering new opinions. [#98 at 3]. The court is not persuaded. At the very least, Mr. Wolf proffered new support for his opinion when he testified during his deposition that the Herrera documents corroborate his finding that Mr. Romero could have continued to work as a motor man for H&P after his employment ended. And he offered this testimony in response to Plaintiff's counsel's questions, after Defense counsel had concluded his examination. The timing of the revelation foreclosed Defendant from engaging in meaningful discovery to rebut the newly articulated theory of support. And, while the record does not necessarily support finding that Plaintiff acted in bad faith (and Defendant does not argue such), I find that the prejudice cannot be cured at this late date with trial less than two weeks away. Additionally, I am not persuaded by Plaintiff's contention of how Defendant could have cured the prejudice itself, but did not do so.[3] Accordingly, I find that the failure to timely disclose the use of the Herrera documents as support for Mr. Wolf's expert opinions is neither justified nor harmless, and I grant Defendant's Motion in Limine as to this request.

B. Medical Experts

H&P asks the court to exclude many of Plaintiff's medical experts. Plaintiff has disclosed one medical expert whom he will call upon to testify at trial, and ten medical experts whom he may call. Defendant concedes that a limited amount of medical expert testimony may

---

[3] In addition, to the extent Plaintiff is correct that Mr. Wolf relied on the Herrera documents to support existing opinions, rather than to offer new ones, precluding Mr. Wolf from testifying to the supplementation should not prejudice Plaintiff.

be relevant to establish the effect Plaintiff's injuries had on his ability to perform the tasks associated with his motor man position, but argues that testimony from eleven experts "is an unnecessary, needlessly cumulative exercise that stands to unduly delay the proceedings, confuse the issues, and potentially mislead the jury." [#78 at 8]. Defendant asks the court to limit the expert medical testimony to two experts, Dr. Craig Gustafson and P.A. Herrera, and contends that the other experts "can provide nothing more than irrelevant information aimed at garnering sympathy and framing this lawsuit as one for compensation of a personal injury." [*Id.* at 10].

Plaintiff responds that of the nine medical experts Defendant wants stricken, he intends to call only one, Dr. Kovachevich, in his case-in-chief, and that he does not intend to call the other eight "unless necessary based on the testimony of the other witnesses or to rebut H&P's case-in-chief." [#98 at 5]. Plaintiff argues that Dr. Kovachevich and the "other treating medical providers who provided post-termination treatment," will offer testimony that is "highly relevant to [his] damages." [*Id.* at 6]. Plaintiff understands that Defendant will argue, in part, that his damages are limited because his medical treatment following his termination, including two surgeries performed by Dr. Kovachevich, limited his capacity for certain types of employment. He argues that he does not intend to offer testimony from each of his post-termination medical providers, but Dr. Kovachevich's testimony is particularly relevant to "the jury's assessment of [his] medical condition post-termination and its impact on his damages," including the duration that he could have continued to work for Defendant as a motor man. [*Id.* at 6-7]. Plaintiff also notes that he and Defendant have stipulated to a jury instruction advising the jury not to decide the case on the basis of sympathy for either Party.

Defendant cites to Rules 401 and 403 of the Federal Rules of Evidence for the basis on which to exclude the nine medical experts. As mentioned above, evidence is relevant if "it has

any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action," Fed. R. Evid. 401(a)-(b); but, the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id*. at 403.

Notably, Defendant contends, and Plaintiff appears to concede, that testimony regarding Mr. Romero's medical treatment is not relevant to the question of liability within the context of his sole claim for wrongful termination in violation of public policy.[4] Instead, Plaintiff seeks to offer evidence regarding his post-termination medical condition for "its impact on his damages (including the length of time Mr. Romero could have continued to work as a motor man for H & P had he not been wrongfully terminated on December 27, 2012)." [#96 at 6]. And, H&P acknowledges that "[a] limited amount of medical expert testimony may be relevant to establish the effect Plaintiff's injuries had on his ability to perform the tasks associated with his motorman position at H&P." [#78 at 8].

---

[4] In Colorado, a terminated employee may sue an employer for wrongful discharge if the employee "shows that he was discharged for exercising a specifically enacted right or duty." *Smith v. Colo. Interstate Gas Co*., 777 F. Supp. 854, 857 (D. Colo. 1991) (citations omitted). This cause of action is "a narrowly crafted exception to the general rule that an at-will employee may not sue for wrongful discharge." *Id.* Mr. Romero must prove the following to prevail on a wrongful discharge claim: (1) H&P prohibited him from exercising a job-related right or privilege; (2) the prohibition violated a specific statute or undermined clearly-expressed public policy relating to Mr. Romero's rights and privileges as a worker; (3) H&P terminated Mr. Romero for exercising a job-related right or privilege; and (4) H&P knew or should have known that Mr. Romero's refusal to comply was based on his reasonable belief that the prohibition was violative of his legal rights and privileges as a worker. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992). The Colorado Jury Instruction for this claim reads in pertinent part as follows: (1) the employee exercised an important work-related right or privilege as a worker; (2) the employer was aware or reasonably should have been aware that the employee exercised his right or privilege as a worker; and (3) the employer discharged the employee because of his or her exercise of the right or privilege as a worker. CJI-Civ. 4th 31:13 (2016). *See also Lathrop v. Entenmann's, Inc*., 770 P.2d 1367, 1372-73 (Colo. App. 1989) (recognizing a common law claim for wrongful discharge if the employee is discharged in retaliation for pursuing a workers' compensation claim).

The court agrees that testimony regarding Mr. Romero's pre-termination medical condition is likely not relevant to liability or damages, and, if relevant, is likely cumulative of the testimony that post-termination medical providers would offer. However, the court has no way of discerning at this time what evidence either Party intends to offer with respect to Plaintiff's medical condition and his associated damages claim. As the court discussed within the context of evidence related to Plaintiff's unemployment benefits, it is more appropriate to deny a motion in limine, or defer ruling on admissibility of particular witnesses and/or testimony, until the record is more fully developed. *See Koch*, 2 F. Supp. 2d at 1388. For planning purposes, the Parties should anticipate that the court will not permit more than three (3) health care providers to testify, and that it will carefully scrutinize whether the proffered testimony is relevant, cumulative, and/or prejudicial.

C. Criminal History of Mr. Stevison

Finally, H&P asks the court to preclude Plaintiff from introducing evidence of Donald Stevison's criminal history, which includes a misdemeanor driving while ability impaired conviction "in 2007 or 2008" ("Misdemeanor Conviction") and a felony conspiracy to manufacture 0 to 500 grams of methamphetamine conviction, for which he was sentenced in late 2001 ("Felony Conviction") (collectively, "Convictions"). Mr. Stevison was released from prison in June 2006. Defendant asserts that the salient issues in this case arise from the December 2012 disciplinary meeting, and that testimony from witnesses who were present at that meeting "is critical to determining contested issues of fact." [#78 at 11].[5] Defendant argues that the Convictions "have no bearing on the issues in this case and provide nothing more than an opportunity for Plaintiff to improperly prejudice the jury against Stevison." [#78 at 11].

---

[5] The Parties expect to hear testimony at trial from each of the four individuals who were present at that meeting: Plaintiff; fellow H&P employee, Adam Vigil; H&P drilling superintendent, Justin Petz, and H&P rig manager, Donald Stevison.

Plaintiff responds first that he does not intend to offer evidence of the Misdemeanor Conviction, "unless Mr. Stevison testifies at trial and makes a statement(s) which render the conviction admissible for purposes of impeachment of the testimony proffered by Mr. Stevison." [#98 at 7]. As to the Felony Conviction, Plaintiff argues that evidence of the Conviction is admissible under Federal Rule of Evidence 609(a).

1. *Applicable Law*

Rule 609 governs impeachment by evidence of a criminal conviction. "The purpose of impeachment is to challenge the credibility of a witness." *United States v. Bagley*, 772 F.2d 482, 487 (9th Cir. 1985) *cert. denied,* 475 U.S. 1023 (1986). "Proper impeachment is not, in itself, evidence of guilt or innocence; it merely casts a doubt on other evidence going directly to those issues which the trier of fact should consider." *Id.* To that effect, "prior felony convictions which do not in themselves implicate the veracity of a witness may have little impact on credibility." *Id.*

In using a criminal conviction to attack a witness's character for truthfulness, evidence of the conviction must be admitted, subject to Rule 403, in a civil case in which the witness is not a defendant. Fed. R. Evid. 609(a)(1). If more than ten years has passed since the witness's conviction or release from the resulting confinement, evidence of the conviction is admissible only if "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." *Id.* at 609(b). The Parties appear to agree that Rule 609(a) applies to Mr. Stevison's taped deposition testimony, and Rule 609(b) applies to his live testimony. *See* [#98 at 7-8]. The party seeking to

introduce the evidence, Mr. Romero here, bears the burden of showing admissibility. *Cox v. Wilson*, No. 15-CV-0128-WJM-NYW, 2016 WL 6803702, at *2 (D. Colo. Nov. 17, 2016).

2. *Application*

Defendant argues as an initial matter that the Felony Conviction did not involve any element of dishonesty. [#78 at 13 (citing 21 U.S.C. §§ 841, 846)]. Additionally, the Felony Conviction and resulting confinement occurred before Mr. Stevison started his employment with H&P. [#78-7 at 10:18-23]. Furthermore, Defendant contends, Mr. Stevison's testimony is limited to the events that occurred during the December 2012 disciplinary hearing, which had no relationship to controlled substances. Ultimately, Defendant asserts, "the inherent and significant prejudice resulting from admission of Stevison's conviction substantially outweighs whatever probative value Plaintiff may assert, risking a confusion of the issues or a misleading of the jury at trial." [#78 at 14].

Plaintiff does not challenge Defendant's contention that the Felony Conviction involves no element of dishonesty, but rather argues that evidence of the conviction is highly probative because his allegations of Mr. Stevison's participation in the events underlying his termination are analogous to a conspiracy. Plaintiff asserts that Mr. Stevison, "was part of an effort by H&P to wrongfully terminate his employment…in retaliation for seeking workers' compensation benefits." He alleges that Mr. Stevison "attempted to conceal the true nature of Mr. Romero's termination from him by attempting to discipline Mr. Romero over an untrue allegation and then claiming that Mr. Romero quit." [#98 at 8-9]. Plaintiff asserts that, in support of these allegations, he intends to introduce evidence in the form of his own testimony and testimony of Mr. Vigil and Mr. Petz that the allegation that he was "lazy" was unfounded, and that Mr. Stevison acknowledged to H&P employees that "he had a directive from H&P to terminate Mr.

Romero due to his workers' compensation claim," and that he acted on that directive. [*Id.* at 9]. Plaintiff argues that the court can instruct the jury to consider the conviction solely for the purpose of truthfulness, and can omit details surrounding the conviction, such as the drug-related nature, and thereby reduce or eliminate the risk that the conviction will confuse the issues or mislead the jury. *Id.* Finally, Plaintiff contends that even if Mr. Stevison appears at trial in person, the court should permit evidence of the Felony Conviction for the purpose of impeachment, depending on Mr. Stevison's specific testimony at trial.

Both Parties appear to anticipate that Mr. Stevison will not appear for trial and that they will likely present the testimony solicited during his deposition. I thus begin by examining the application of Rule 609(a) to the use of Mr. Stevison's deposition testimony. First, this court concurs that "there can be no doubt that admission of evidence of a prior felony conviction is inherently and significantly prejudicial." *Cox*, 2016 WL 6803702, at *2. As observed above, the court must, under the Rule, allow evidence of a criminal conviction for the purpose of attacking a witness's character for truthfulness, subject to Rule 403. However, as discussed below, I find that evidence of the Convictions is not relevant and that any limited probative value of the Felony Conviction is outweighed by risk of unfair prejudice and confusing the issues.

The Parties agree that one claim is at issue, i.e., whether H&P wrongfully terminated Mr. Romero's employment. To show that evidence of the Felony Conviction has probative value, Plaintiff crafts an analogy between the Claim and the Felony Conviction based on allegations that Mr. Stevison conspired with his supervisors at H&P to terminate Mr. Romero's employment. Plaintiff's analogy is flawed on multiple levels.

Under Rule 401, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

determining the action." Fed. R. Evid. 401. Applying this standard, the court finds that Mr. Stevinson's Felony Conviction is simply not relevant. The Claim does not implicate any party or non-party in the use or manufacture of drugs, and the Claim is entirely unrelated to the conviction of Mr. Stevison for conspiracy to do so. Conspiracy is not even an element of the claim for wrongful termination or the associated damages. Even if conspiracy were somehow relevant, there is also no evidence that Mr. Stevison's alleged H&P co-conspirators were involved in the conspiracy that resulted in the Felony Conviction; nor is there an indication that Mr. Stevison sought to benefit by conspiring with others to terminate Mr. Romero, or faced repercussions if he declined to so conspire. And the fact that Mr. Stevinson has a prior felony does not make it more or less probable that Mr. Stevinson and/or H&P took action against Mr. Romero for exercising his worker's compensation rights. Mr. Stevinson's Misdemeanor Conviction is similarly irrelevant.

Additionally, both Parties designated deposition testimony to offer at trial, and, if Mr. Stevison does not appear, the designated testimony is the only testimony the jury will hear. Plaintiff designated a large swath of testimony, *see* [#80], and Defendant counter-designated the following lines:

> Q. Do you have any certificates or anything of that nature?
> A. For what?
> Q. For any subsequent programs or anything that you completed beyond high school? For example, there are human resources programs, OSHA programs, things of that nature that give certificates of completion of a set amount of course work. Do you have anything of that nature?
> A. Oh, yes. I have several of them that H&P sent us to and we all received certificates of completion.
> Q. Okay.
> A. Supervising skills, rig manager skills. They offered several, several training sessions that we all took and have certificates for.
> Q. Okay. There again, were those programs through H&P, do you recall if they were internal training programs? In other words, training that was provided by

other H&P employees or was the training provided by external individuals or both?
A. Mainly external, but there were a few classes that we took that were in-house through H&P.

[#81, #81-1 at 21:20-22:17]. Notably, neither Party designated or counter-designated testimony that could be impeached by evidence of a conviction for conspiracy to manufacture drugs or driving while ability impaired. For instance, the designated testimony does not include Mr. Stevison claiming he would never conspire, or never manufacture methamphetamine; nor does the testimony include claims that he is not easily influenced or intimidated by his superiors, that he is impervious to peer pressure, or that he would not do another's bidding, for example. None of the designated testimony implicates Mr. Stevison's proclivity to act conspiratorially or to avoid the efforts of others to conspire. *See* [#80, #80-1, #81, #81-1]. None of the designated testimony implicates Mr. Stevison's sobriety or driving abilities. Indeed, Plaintiff filed his Response to Defendant's Motion in Limine after he submitted his deposition designations and after Defendant had submitted his counter designations, and Plaintiff does not explain in his Response what testimony designated for use at trial is properly impeached by evidence of the Convictions. *See* [#98]. The court, having independently reviewed the designated testimony, finds no basis for using either Conviction to impeach Mr. Stevison's truthfulness.

This court further concludes that there is significant risk that evidence of Mr. Stevison's Convictions will confuse and/or mislead the jurors, and that any potential probative value of the Convictions is outweighed by its prejudicial effect. *See United States v. Howell*, 285 F.3d 1263, 1270 (10th Cir. 2002) ("After conducting the Rule 403 balancing, the court may determine that evidence of the conviction, or certain aspects of evidence of the conviction, are properly excluded") (citing *United States v. Ford,* 17 F.3d 1100, 1103 (8th Cir. 1994) ("It is within the district court's discretion to conclude that the nature of [the witness's prior felony conviction]

might inflame the jury.")).  With respect to Rule 609(b), the probative value of the evidence of the conviction, including the facts and circumstances surrounding the conviction, must *substantially* outweigh its prejudicial effect.  Fed. R. Evid. 609(b)(1).  The presumption is that evidence of an old conviction is not admissible.  *See Cox*, 2016 WL 6803702, at *2 ("with respect to a conviction more than ten years old, the general rule is one of inadmissibility," and, to overcome the presumption, the conviction must be "substantially" more probative than prejudicial) (citing *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (Rule 609(b) balancing test creates "predisposition toward exclusion"); *United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1571 (10th Cir. 1993) (further citations omitted).  *See also* Fed. R. Evid. 609(b) advisory committee's note ("It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.").  Plaintiff has not overcome that presumption.

For these reasons, the court grants the Motion in Limine as to the application of Rule 609(a) and hereby precludes any reference to Mr. Stevison's Convictions, regardless of whether Mr. Stevison testifies live or through deposition.[6]

Accordingly, **IT IS ORDERED** that:

1.  Plaintiff's Ominbus Motion in Limine [#79] is **GRANTED IN PART and DENIED IN PART**; and

---

[6] Of course, to the extent Mr. Stevinson testifies at trial in an unexpected manner that renders either Conviction relevant, the court may, at the appropriate time, consider a renewed motion to introduce evidence of the Convictions.  For instance, the court could reconsider its ruling should Mr. Stevison appear for trial and offer testimony suggesting that he would not act in concert with others with respect to the termination of a subordinate.  *See Koch*, 2 F. Supp. 2d at 1388 ("At trial, the court may alter its limine ruling based on developments at trial or on its sound judicial discretion") (citing *Luce v. United States,* 469 U.S. 38, 41 (1984)).  *See also Deghand v. Wal-Mart Stores, Inc.*, 980 F. Supp. 1176, 1180 (D. Kan. 1997) ("A ruling in limine may be subject to change based upon developments at trial, and the ruling does not remove the obligation of the party to object, to move to strike, or to make offers of proof") (citing *Thweatt v. Ontko,* 814 F.2d 1466, 1470 (10th Cir. 1987)).

2. Defendant's Ominbus Motion in Limine, [#78] is **GRANTED IN PART and DENIED IN PART**.

DATED: August 1, 2017                    BY THE COURT:

                                         s/Nina Y. Wang_____
                                         United States Magistrate Judge