IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00720-NYW

SILO ROMERO,

    Plaintiff,

v.

HELMERICH & PAYNE INTERNATIONAL DRILLING CO.,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER
---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant Helmerich & Payne International Drilling Co.'s ("Defendant" or "H&P") oral, mid-trial Motion for Judgment as a Matter of Law and its renewed motion for judgment as a matter of law made at the close of evidence ("JMOL Motion").[1] The JMOL Motion is before the court pursuant to the Order of Reference dated July 13, 2015 [#24], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. On August 18, 2017, the court issued an oral ruling on the record disposing of the JMOL Motion. The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and now memorializes its oral ruling in a written order. For the following reasons, as well as those stated on the record, the JMOL Motion is **DENIED**.

---

[1] The court refers to the motions collectively in singular form, for ease of reference, because Defendant renewed its Motion for Judgment as a Matter of Law without making additional substantive arguments.

**BACKGROUND**

Plaintiff Silo Romero ("Plaintiff" or "Mr. Romero") commenced this action on December 24, 2014, by filing a Complaint in the District Court for Mesa County, Colorado. [#5] Plaintiff asserts one claim for wrongful discharge in violation of public policy, alleging that he was terminated from his employment with H&P in retaliation for seeking worker's compensation benefits for lost wages incurred after an on-the-job injury. H&P contends that Mr. Romero voluntarily resigned. H&P removed the action to this District and this court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* [#1].[2] Trial in this matter commenced before a jury on August 14, 2017. On August 17, 2017, Defendant moved orally, after the close of Plaintiff's case-in-chief, for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, and renewed the same motion, without any further argument, at the close of its case.[3]

H&P argued it was entitled to judgment as a matter of law as to Plaintiff's claim for wrongful discharge in violation of public policy under two theories: (1) there was insufficient evidence under any theory of discharge (actual or constructive) to adduce a causal connection between Plaintiff's pursuit of a worker's compensation claim for lost wage benefits and Plaintiff's separation from employment at H&P; and (2) there was insufficient evidence of constructive discharge because Mr. Romero had testified that he had been fired, not that he had quit, and the record did not support a finding that his working conditions were objectively intolerable. The court denied the JMOL Motion on the first theory on the record on August 17,

---

[2] H&P asserted in its Notice of Removal that while Plaintiff filed his Complaint on December 24, 2014, the amount of damages claimed was not clear until March 20, 2015, when Defendant received Plaintiff's Initial Disclosures identifying over $1,200,000 in economic damages. [#1 at ¶ 6].

[3] Plaintiff did not offer any additional evidence in rebuttal.

2017, before Defendant offered its defense. As to the second issue related to constructive discharge, the court deferred ruling on the JMOL Motion and sought further briefing from the Parties on the issue. *See Hillman v. U.S. Postal Serv.,* 169 F. Supp. 2d 1218, 1223 (D. Kan. 2001) ("While the trial court has the authority under Rule 50(a) to grant a motion for judgment as a matter of law at the close of the plaintiffs' case, the more prudent course is to defer ruling until both sides have rested") (citations omitted). *See also* [#125, #126]. The court now turns to the second theory offered in support of the JMOL Motion.[4]

## LEGAL STANDARDS

**I.    Judgment as a Matter of Law**

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides:

(1) In General.  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A motion for judgment under Rule 50(a)(1) may be made at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). In evaluating a defendant's Rule 50(a) motion, the court is required to consider all the evidence presented at trial, and must review the record "taken as a whole." *Reeves v. Sanderson*, 530 U.S. 133, 150 (2000). "[T]he court must draw all reasonable inferences in favor of the nonmoving party and it may not make credibility determinations or weigh the evidence." *Id.* at 150. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986)).

---

[4] The court maintains its denial of the JMOL Motion as to the first theory for the same reasons as set forth on the record on August 17, 2017.

Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151 (quoting 9A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2529, p. 300 (2d ed. 1995)). In sum, the "standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the 'inquiry under each is the same.'" *Reeves*, 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-251). The court may grant the motion only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position. *Bristol v. Board of County Commissioners of County of Clear Creek*, 281 F.3d 1148, 1161 (10th Cir. 2002).

## II. Wrongful Discharge in Violation of Public Policy

Plaintiff has the burden of establishing each essential element of his claim by a preponderance of the evidence. Because this court exercises diversity jurisdiction, it applies the substantive law of the state of Colorado. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). In Colorado, a terminated employee may sue an employer for wrongful discharge if the employee "shows that he was discharged for exercising a specifically enacted right or duty." *Smith v. Colo. Interstate Gas Co.*, 777 F. Supp. 854, 857 (D. Colo. 1991) (citations omitted). A plaintiff must prove each of the following elements in order to prevail:

(1) the employee exercised an important work-related right or privilege as a worker;

(2) the employer was aware or reasonably should have been aware that the employee exercised his right or privilege as a worker; and

4

(3) the employer discharged the employee because of his or her exercise of the right or privilege as a worker.

CJI-Civ. 4th 31:13 (2016). *See also Mowry v. United Parcel Serv., Inc.,* 280 F. App'x 702, 707–08 (10th Cir. 2008) (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992)).

## ANALYSIS

In support of its argument that it was entitled to judgment as a matter of law as to any theory based on constructive discharge, H&P argued that Mr. Romero testified unequivocally that he did not quit, but was fired, and that he did not find the working conditions at H&P so intolerable that he felt forced to quit. After reviewing the informal transcript of the proceeding, the court concludes that Mr. Romero's testimony does not entitle H&P to judgment as a matter of law.

The Parties did not provide authority precisely on point in their supplemental trial briefs, and this court could find none. Accordingly, the court considered as instructive the law of the State of Colorado on wrongful discharge in violation of public policy as well as the state's law on constructive discharge. After doing so, the court concludes that Mr. Romero's testimony that he was fired, viewed within the context of all of his testimony, is not dispositive of whether he was constructively discharged. Taking a step back from the semantics of "fired" versus "quit," the court first considers the general remedial nature of the Colorado common law claim. The Colorado Supreme Court first recognized the tort of wrongful discharge in violation of public policy in *Martin Marietta Corp. v. Lorenz*, noting that courts in the majority of states identify a cause of action for wrongful discharge pursuant to the public-policy exception to the at-will employment doctrine. 823 P.2d 100, 105–06 (Colo. 1992) (en banc). This court recognizes that the claim for wrongful discharge in violation of public policy creates an exception to the at will

nature of some employment relationships, i.e, an employer can fire an employee for cause or for no reason at all, so long as the reason does not violate public policy. The purpose of the common law claim is to protect workers from being involuntarily separated from their employment due on the exercise of their protected rights. As observed by the *Lorenz* court:

> [t]o allow an employer to terminate the employment of an employee in retaliation for the employee's pursuit of a workmen's compensation claim would open the doors to "coercion and other duress-provoking acts," whereby employers could, by threat of retaliation, discourage or prevent employees from seeking the benefits due them and thereby undermine the fundamental purposes of the workmen's compensation system.

823 P.2d at 108 (quoting *Lathrop v. Entemann's Inc.*, 770 P.2d 1367 (Colo. App. 1989)). The *Lorenz* court noted the conclusion in *Lathrop* that "an employer's retaliation against such an employee for his exercise of such right violates Colorado's public policy" and "provides the basis for a common law claim by the employee to recover damages sustained by him as a result of that violation." *Id.*

Working within this framework, the court concludes that the operative inquiry related to discharge is not limited to an examination of the particular words used in any exchange between an employee and his or her supervisor or employer, but whether the employee left his or her position voluntarily or involuntarily. In this instance, the operative inquiry is whether the evidence demonstrates that Mr. Romero left his employment involuntarily, *either* because H&P actually fired him *or* because H&P constructively discharged him by making his working conditions so intolerable following the exercise of his right to worker's compensation benefits that he had no choice but to leave his employment. Indeed, the Court of Appeals for the Tenth Circuit has recognized that constructive discharge is simply one form of wrongful discharge. *See Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009) (quoting *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998); *Hall v. U.S. Dep't of Labor, Admin.*

6

*Review Bd.*, 476 F.3d 847, 860 (10th Cir. 2007) (explaining that to prevail on a constructive discharge claim, the employee must show either that the employer has made objective working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign *or* the employer forced the plaintiff to choose between resignation or termination). *Cf. Patterson v. Portch*, 853 F.3d 1399, 1405-06 (7th Cir. 1988) (discussing and distinguishing four forms of discharge, but observing that constructive discharge is treated in law as the equivalent of outright discharge by the employer). In reviewing the admitted evidence through this lens, the court finds that Mr. Romero's testimony that he was fired, and that his working conditions were not intolerable, are not dispositive. During trial, Mr. Romero testified that Donnie Stevison gave him a choice to either sign a disciplinary charge, known as a 302 Form, or to "pack his sh** and go."[5] Plaintiff's co-worker, Adam Vigil, testified that he understood those words to mean that Mr. Romero did not have a choice to remain employed with H&P, i.e., that Plaintiff had been fired. Both Mr. Vigil and Justin Petz, Mr. Romero's direct supervisor, testified that Mr. Stevison had reprimanded Mr. Romero for being "lazy," or lacking a strong work ethic, and that they believed, from their own experience, that the criticism was an unfair assessment of Mr. Romero's work. Mr. Petz further testified that Mr. Stevison made no effort to stop Mr. Romero from leaving even after Mr. Stevison agreed that Mr. Romero was a good worker.

The next inquiry for the court is whether, as a matter of law, a single meeting can result in working conditions so intolerable as to cause a constructive discharge. Defendant contends that the single incident where an employee reasonably believes that he has been terminated based on an employer's statement is inadequate, as is an employee's reasonable, but subjective, belief

---

[5] The court is disinclined to include profanity in its ruling, but would note the precise verbiage used during testimony because, in the court's estimation, the nature of the language influences how one interprets the event that is central to this action.

that he has been terminated. Plaintiff argues that Colorado Jury Instruction 39:10 acknowledges the existence of an implied constructive discharge:

> Even if the plaintiff resigned from (his) (her) employment, if you find that the words spoken or actions taken by the defendant would have led a reasonable person in the plaintiff's position to believe, and did lead the plaintiff to believe, that (he) (she) had been or was going to be discharged by the defendant, then the plaintiff was, in fact, discharged by the defendant.

CJI-Civ. 31:10. Defendant insists there can be no implied constructive discharge in this case, as such a theory is limited to the context of a public employee and is not applicable to an employee at will in a private corporation. The court respectfully disagrees with Defendant, and frames the inquiry differently. First, this court concludes, as a matter of law, that a single incident can amount to the type of intolerable working conditions necessary to find constructive discharge. Indeed, to decide otherwise would mean an employee facing a Hobbesian choice in a single occurrence has no cognizable claim because the remainder of her employment is not intolerable, and may even be enjoyable. Second, Defendant did not cite any authority that expressly limits CJI-Civ. 31:10 to the public employee context, and this court could find none. Neither the Notes of Use associated with the jury instruction, nor the case upon which the instruction is based, suggests such a limitation. *See Colorado Civil Rights Comm'n v. School Dist. No. 1*, 488 P.2d 83 (Colo. App. 1971). Rather, the Notes of Use state:

> [t]his instruction should be given if the evidence creates a legitimate issue as to whether the plaintiff's resignation was voluntary or was induced by the employer's conduct that led the plaintiff to believe and would have led a reasonable person in the plaintiff's position to believe that he or she had been or was going to be discharged.

Absent authority from Colorado courts, this District, or the Tenth Circuit, the court declines to read in a limitation that would preclude an employee in the private employer context from establishing implied constructive discharge when a reasonable person in the plaintiff's position

8

would believe that his or her employer's conduct or words amounted to involuntary discharge. In so ruling, the court finds that the circumstances giving rise to a plaintiff's departure must be so objectively difficult or intolerable that the employee has no other option but to resign. *Cf. Christie v. San Miguel County School Dist. R-2(J)*, 759 P. 2d 779, 782 (Colo. 1988).

This holding, however, does not resolve the question under Rule 50(a) of whether Mr. Romero has presented sufficient evidence to allow the theory of constructive discharge to go to the jury. Again, Defendant contends that Mr. Romero's testimony that his working conditions were not intolerable precludes a finding that he was forced to leave. Plaintiff argues that it would be sufficient for a constructive discharge theory for him to have reasonably believed he was fired, even if the overall conditions were not intolerable. The court finds that neither construction is precisely on point, and notes that the case law discussing constructive discharge does not indicate that a finding of intolerable circumstances requires a precise temporal scope or certain number of instances of offensive conduct. And, in considering whether the evidence presented during trial can support a theory of constructive discharge so as to defeat a Rule 50(a) motion, the court finds that it must evaluate the record as a whole and in a light most favorable to Plaintiff as the non-moving party.

Thus, the court has considered all relevant evidence, both direct and circumstantial, and applied the foregoing principles and standards of analysis to the existing evidentiary record. The undersigned concludes that there is sufficient evidence for a jury to find that Mr. Romero suffered an involuntarily separation from his position. The supporting evidence includes, but is not limited to, Plaintiff's own testimony that he was given a choice by Mr. Stevison to either sign the 302 Form, or to "pack his sh** and go." As discussed above, Mr. Vigil testified that he perceived that Mr. Romero had a choice to sign the 302 or be fired. There is evidence from Mr.

Romero, Mr. Vigil, and Mr. Petz that Mr. Stevison called Mr. Romero "lazy," or accused him of lacking a certain work ethic. The record also includes evidence that, when Mr. Stevison called Mr. Romero "lazy," Mr. Romero opined that Mr. Stevison must not need him as a worker, and Mr. Stevison said, "you're right, I don't need you." There is also evidence in the record that all of the participants of the December 27, 2012 meeting ultimately agreed that Mr. Romero was, in fact, not "lazy," and that he was known to be a hard worker. Indeed Mr. Petz, Plaintiff's direct supervisor, described Plaintiff as the best motor man he had worked with, both in terms of mechanical skills and work ethic. This court finds that a reasonably jury could conclude that a supervisor's unjustified criticism or accusation that an employee is "lazy," coupled with the supervisor's use of profanity and followed by the supervisor's agreement or instruction that the employee should "go," could constitute the kind of intolerable working conditions necessary to find that the employee involuntarily left his job.

In so finding, this court makes two separate observations. First, the four individuals who were present during the meeting gave varying accounts of what occurred and what was said, but credibility determinations are not for the court to make. *Shaw v. AAA Eng'g. & Drafting*, 213 F.3d 519, 529 (10th Cir. 2000). Judgment as a matter of law upon a Rule 50(a) motion is only warranted if the evidence permits only one rational conclusion. *Crumpacker v. Kan. Dep't of Human Res.*, 474 F.3d 747, 751 (10th Cir. 2007). Second, state courts outside of Colorado that have considered whether a plaintiff adequately established constructive discharge based on similar facts (albeit in different contexts) have reached different conclusions regarding whether discharge has occurred. *See e.g. Finstad v. Montana Power Co.*, 241 Mont. 10 (1990) (overturning a jury verdict and holding that an employee's refusal to agree to a transfer, and subsequent exit after being asked to turn in his keys and vacate the office, did not amount to

actual or constructive discharge); *Tabor v. Gatson*, 533 S.E.2d 356, 358 (W. Va. 2000) (reviewing an unemployment proceeding and holding that "[i]n light of the fact that the employer made remarks which reasonably have been construed as meaning that the appellant had been fired, that the appellant testified that he had been fired, and that the employer suggested that the appellant had misunderstood what was meant when the remarks were made," a liberal reading of the evidence allowed the appellant to legitimately conclude that he had been fired). The lack of uniformity in these holdings suggests to the court that the record contains sufficient facts, when viewed in the light most favorable to Plaintiff, to submit the issue of constructive discharge to the jury.

The court notes that these rulings do not affect Plaintiff's burden of establishing his claim by a preponderance of the evidence, including but not limited to the element of the claim for wrongful discharge in violation of public policy that necessarily requires Plaintiff to establish a causal connection between any involuntary separation and his exercise of rights under the Worker's Compensation Act. The court found on the record on August 17, 2017, that there was sufficient evidence for that issue to go to the jury. Accordingly, Defendant is not entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated herein and on the record on August 17, 2017, **IT IS ORDERED** that Defendant's Motions for Judgment as a Matter of Law under Fed. R. Civ. P. 50(a)(1), brought first at the close of Plaintiff's evidence and then at the close of all evidence, are **DENIED**.

DATED: August 22, 2017                    BY THE COURT:


                                          s/ Nina Y. Wang
                                          United States Magistrate Judge