# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00720-NYW

SILO ROMERO,

      Plaintiff,

v.

HELMERICH & PAYNE INTERNATIONAL DRILLING CO.,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on the following post-trial motions:

      (1)     Plaintiff Silo Romero's ("Plaintiff" or "Mr. Romero") "Motion for Pre-Judgment Interest and to Set Rate of Post-Judgment Interest," ("Motion Regarding Interest"). [#138, filed September 19, 2017];

      (2)     Defendant Helmerich & Payne International Drilling Co.'s ("Defendant" or "H&P") Motion to Stay Execution of Judgment and Approve Bond ("Motion to Stay"), [#139, filed September 19, 2017]; and

      (3)     Defendant's Motion for New Trial, [#146, filed October 2, 2017].

      These Motions are before the court pursuant to the Order of Reference dated July 13, 2015 [#24], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. The court has carefully considered the Motions and related briefing, the entire case file, the applicable case law, and the comments offered during the November 13, 2017 Motions Hearing, and, for the following reasons, orders that the Motion Regarding Interest is **GRANTED IN PART and**

**DENIED IN PART**, the Motion to Stay is **GRANTED**, and the Motion for New Trial is **DENIED**.

## BACKGROUND

Plaintiff Silo Romero ("Plaintiff" or "Mr. Romero") initiated this action on December 24, 2014, by filing a Complaint in the District Court for Mesa County, Colorado. [#5] Plaintiff asserted one claim for wrongful discharge in violation of public policy, alleging that he was either actually or constructively terminated from his employment with H&P in retaliation for seeking workers' compensation benefits for lost wages incurred after an on-the-job injury. H&P contended that Mr. Romero voluntarily resigned. H&P removed the action from state court, and this court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* [#1].

Trial in this matter commenced before a jury on August 14, 2017. On August 18, 2017, following five days of trial, the jury returned a special verdict, finding in favor of Plaintiff as to liability and awarding him $100,000 in noneconomic losses and $500,000 in economic losses. [#134]. The jury also determined that this award should be reduced by the amount of $20,000 due to Plaintiff's failure to mitigate his damages. *Id.* On September 5, 2017, the court entered judgment in Mr. Romero's favor and against H&P in the amount of $580,000. [#137]. The court awarded Mr. Romero postjudgment interest to be calculated pursuant to 28 U.S.C. § 1961 and his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. *See id.*

On September 19, 2017, Plaintiff filed the Motion Regarding Interest, asking that the court award him prejudgment interest pursuant to certain Colorado law and federal authority that applies in a diversity action, and that the court set the postjudgment interest rate at 1.24 percent. [#138]. The same day, H&P filed the Motion to Stay pursuant to Federal Rules of Civil

Procedure 62(b) and (d), asking the court to stay enforcement of the judgment and to approve a bond in the amount of $725,000 as security. [#139]. Defendant filed a Response to the Motion Regarding Interest on October 2, 2017. [#145]. Plaintiff filed a Response to the Motion to Stay on October 3, 2017. [#147]. Defendant filed a Reply in support of its Motion on October 9, 2017, [#148], and Plaintiff filed a Reply in support of his Motion on October 12, 2017, [#152].

On October 2, 2017, H&P filed a Motion for a New Trial pursuant to Federal Rule of Civil Procedure 59. [#146]. Plaintiff filed a Response on October 25, 2017, [#158], and Defendant filed a Reply on November 7, 2017, [#160].

On November 12, 2017, Plaintiff submitted a "Notice Regarding Amount of Pre-Judgment Interest on Non-Economic Damages; and Updates to Other Calculations" (the "Notice"). [#161]. On November 13, 2017, the court presided over a Motion Hearing and took argument with respect to the Motion Regarding Interest and Motion to Stay. *See* [#162].

## ANALYSIS

### I. Motion Regarding Interest

Mr. Romero asks the court to award him prejudgment interest as applied to personal injury damages pursuant to Colo. Rev. Stat. § 13-21-101. He also asks the court to award postjudgment interest at a rate of 1.24 percent. Because the court exercises diversity jurisdiction over this action, it looks to state law to determine whether prejudgment interest on damages is allowed. *See, e.g., Casto v. Arkansas–Louisiana Gas Co.*, 562 F.2d 622, 625 (10th Cir. 1977); *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009) ("It is well established that a 'federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest.'") (quoting *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1288 (10th Cir. 2005)). In applying Colorado law, this court "must look to the rulings of

the highest state court." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (also holding that federal courts must "giv[e] 'proper regard' to relevant rulings of other courts of the State" if no directly applicable "highest state court" ruling exists).

## A. Stipulated issues

Although out of order from the briefing submitted by the Parties, the court begins with the issues the Parties do not dispute. The Parties agree for the purpose of the interest calculation on the following operative dates: December 27, 2012, as the date of the accrual of the claim; December 24, 2014, as the date Plaintiff filed the lawsuit; and September 5, 2017, as the date of the entry of judgment. The Parties also agree that Plaintiff should receive prejudgment interest on his noneconomic damages award of $100,000 pursuant to Colo. Rev. Stat. § 13-21-101, as applicable to personal injuries.

While the Parties originally disagreed as to the calculation of the correct amount of prejudgment interest on the award of noneconomic damages, Plaintiff's Notice filed November 12, 2017 reflects the Parties' stipulation as to the amount, which stipulation Defendant subsequently confirmed at oral argument the following day. [#161, #162-1 at 2]. Therefore, the court finds that the prejudgment interest associated with the jury verdict of $100,000 in noneconomic damages totals **$48,917.43**.

Additionally, Plaintiff concedes in his Reply that the proper postjudgment interest rate is **1.23 percent**, and accordingly, this court sets the postjudgment interest rate as such, applied to the jury verdict from September 5, 2017 forward.

The court now turns to the disputed issues arising from the jury's award of economic damages.

### B.     Prejudgment Interest Applied to Economic Damages Award

Plaintiff argues that the court should award Mr. Romero prejudgment interest from the date the action accrued, i.e., December 27, 2012, to the date of the judgment, September 5, 2017 at a rate of 9 percent per annum, as set by Colo. Rev. Stat. § 13-21-101 that is applicable to personal injury money judgments.  Defendant contends that the applicable interest rate is derived not from § 13-21-101, but from the Colo. Rev. Stat. § 5-12-102 that provides for 8 percent per annum.  Defendant also contends that no prejudgment interest is applicable to any award of front pay, either because Plaintiff's expert already included front pay in his calculation, or because § 5-12-102 only allows prejudgment interest on Plaintiff's past economic damages.  [#145].  In reply, Mr. Romero insists that the application of § 13-21-101 is proper because his claim is tort in nature; § 13-21-101 provides for prejudgment interest on future damages; and the damage calculations for past losses were not adjusted by either inflation or a growth rate.  [#152]. Plaintiff further argues, in the alternative, should the court disagree regarding the applicable statute and/or award of prejudgment interest on future damages, his past economic losses as identified by the jury total at least $237,630.

### 1.     Applicable Colorado Statute

The court first turns to address which prejudgment interest statute applies.  Interest is commonly understood as "the compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money or its equivalent." *Farmers Reservoir and Irr. Co. v. City of Golden*, 113 P.3d 119, 132 (Colo. 2005) (quoting *Stone v. Currigan,* 138 Colo. 442, 445, 334 P.2d 740, 741 (1959)).  "[T]he purpose of prejudgment interest is to reimburse the plaintiff for inflation and lost return."  *Goodyear Tire & Rubber Co. v. Holmes,* 193 P.3d 821, 826 (Colo. 2008)  (citing *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 364 (Colo.

1989) ("Section 5–12–102 recognizes the time value of money."). "The right to prejudgment interest, independent of an agreement to pay it, is statutory." *South Park Aggregates v. Northwestern National Insurance Co.,* 847 P.2d 218 (Colo. App. 1992). And a trial court's award of prejudgment interest under Colorado statute is "a ministerial act that is mandatory and does not require the exercise of judgment or discretion." *Todd v. Bear Valley Village Apts.,* 980 P.2d 973, 981 (Colo. 1999).

Prejudgment interest is available in Colorado pursuant to one of two statutes. Section 5-12-102, C.R.S. serves as Colorado's "general prejudgment and postjudgment statute." *Farmers Reservoir*, 113 P.3d at 133 (citing *Great W. Sugar Co. v. KN Energy, Inc.*, 778 P.2d 272, 276 (Colo. App. 1989)). Section 5-12-102 is known as the "wrongful withholding statute," and applies in all actions that do not involve personal injury. The section is "comprehensive in scope," but has been described as providing for prejudgment interest in cases where "the aggrieved party lost or was deprived of something to which she was otherwise entitled." *Parker*, 200 P.3d at 353 n.3 (quoting *Goodyear Tire & Rubber Co. v. Holmes,* 193 P.3d 821, 825 (Colo. 2008)). As the *Goodyear Tire* court explained, "[w]hen a plaintiff is injured by a defendant, she is wronged by that defendant's action and becomes entitled to damages." *Id.* at 826 (citing *Seaward Constr. Co. Inc. v. Bradley,* 817 P.2d 971, 975 (Colo. 1991)). A plaintiff typically seeks damages that would make her whole at the time they are measured; however, the defendant generally does not pay those damages until later, when they are awarded by the court. "During the period between the time at which the plaintiff's loss is measured and the judgment, the plaintiff is deprived of the use of the money or property that would constitute the award"; in other words, the money comprising the damages award is "wrongfully withheld." *Id.* The "wrongful withholding" occurs at the time plaintiff's injury is measured. *Id.* at 828. The

withholding of the money causes plaintiff a loss, known as "time value of money," which is a result of inflation, reduced value of money over time, and plaintiff's inability to earn a return on the money. *Id.* at 826.

The other prejudgment interest statute, § 13-21-101, is known as the "personal injury statute," and governs the award of interest on damages "[i]n all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of such other person, corporation, association, or partnership…" Colo. Rev. Stat. § 13-21-101(1). *See USAA v. Parker*, 200 P.3d 350, 353 (Colo. 2009). Again, the purpose of prejudgment interest in personal injury actions is to "compensate a plaintiff for the time value of the award eventually obtained against the tortfeasor." *Morris v. Goodwin,* 185 P.3d 777, 780 (Colo. 2008).

As observed by the *Parker* court, "[a] trial court's application of one statute rather than the other can substantially impact a plaintiff's award." 200 P.3d at 357 n.9. The "personal injury statute" provides for the accrual of interest at a rate of nine percent per annum "from the date the action accrued"; whereas the "wrongful withholding statute" provides that interest accrues at a rate of eight percent per annum "from the date of wrongful withholding." *Id.* (quoting Colo. Rev. Stat. §§ 13-21-101(1), 5-12-102).

Mr. Romero argues that § 13-21-101(1) applies because his claim lies in, and his damages are attributable to, a tort. *See* [#152 at 2]. No one disputes that Plaintiff's single claim for wrongful discharge in violation of public policy sounds in tort, but it is clear from case law of both the Colorado state courts and the Tenth Circuit that § 13-21-101 does not apply to all torts indiscriminately. The more precise question is whether the **nature of the injury** is personal such

that section 13-21-101(1) applies. *See Parker*, 200 P.3d at 353 ("The plain language of the 'personal injury statute' provides that the nature of the damages sought by the plaintiff, rather than the source of the defendant's obligation to pay the plaintiff, triggers its application."). After reviewing the legislative history of the statute, the statute itself, and the interpreting case law from both the state and federal courts, I am persuaded that the nature of Mr. Romero's injury is not personal such that § 13-21-101 applies.

To begin, § 13-21-101 originated in 1911 and was amended in 1975, 1979, and 1982. *See* C. L. § 6306 (1921), CSA, C. 50, § 5 (1935), and C.R.S § 41-2-1 (1953). It is clear that from the beginning, the statute was intended to provide interest based on the nature of injuries, i.e., "for personal injuries," rather than on the nature of the cause of action. Journal of Laws, Colo. Gen. Assembly, 18th Sess. 296-97 (1911). "An injury is personal when it impairs the well-being or the mental or physical health of the victim." *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 610 (Colo. App. 2007). "In contrast, an injury is not personal when inflicted on property." *Id.* (quoting *McCafferty v. Musat*, 817 P.2d 1039, 1046 (Colo. App. 1990)). Plaintiff asserts that his "damages are personal in nature because H & P's tortious conduct impaired [his] economic well-being (i.e. his potential to make a living in the future, from December 27, 2012, onward, from H & P or another employer"). [#152 at 4]. In support of his position that § 13-21-101 applies to his injury, Plaintiff relies solely on *David v. Sirius Computer Sols., Inc.*, 779 F.3d 1209 (10th Cir. 2015). The court finds *David* to be distinguishable based on the record before it.

In *David*, the jury found in plaintiff's favor on a claim for negligent misrepresentation and awarded economic damages, but declined to award noneconomic damages. The trial court subsequently denied the plaintiff's motion for prejudgment interest under § 13-21-101. The Tenth Circuit reversed, agreeing with plaintiff that "the district court was wrong to equate

personal injuries with noneconomic losses," explaining that "lawsuits aimed at vindicating 'personal injuries' do often wind up yielding 'economic' damages," and remanded the case for an award of prejudgment interest. 779 F.3d at 1210. In doing so, the Circuit observed that "personal injuries can also give rise to economic losses." *Id.* at 1212. Mr. Romero argues that, like in *David*, his economic losses are for diminished earning and future business prospects that are personal in nature. [#152 at 3].

The Colorado courts have consistently held that "[a]n injury is personal when it impairs the well-being or the mental or physical health of the victim." *See, e.g., Antolovich*, 183 P.3d at 610. The *David* court found that plaintiff's economic damages, which arose from a personal misrepresentation made to her, constituted a personal injury for the purpose of applying § 13-21-101. *See David*, 779 F.3d at 1210.[1] By contrast, the record before this court indicates that Mr. Romero's claimed economic damages did not result from impairment to his well-being or mental or physical health, or from a personal wrong like defamation or misrepresentation directed at him, but from the termination of his continued employment after exercising his worker's compensation rights. *See Schuessler v. Wolter*, 310 P.3d 151, 168 (Colo. App. 2012) (finding that application of § 5-12-102, rather than § 13-21-101, was appropriate because the damages "did not result from a personal injury…because they did not result from an impairment of Schuessler's mental or physical health or well-being"). *Cf. Antolovich*, 183 P.3d at 610 (collecting cases where injury was personal even though a property interest was implicated); *Herod v. Colo. Farm Bureau Mut. Ins. Co*., 928 P.2d 834, 838 (Colo. App. 1996) (holding that

---

[1] This court does not read *David* to necessarily require application of § 13-21-101 to any economic damages award resulting from a jury verdict in a negligent misrepresentation case. *See Messler v. Phillips*, 867 P.2d 128, 132 (Colo. App. 1993) (stating without discussing that § 13-21-101 was not applicable in a negligent misrepresentation action "because plaintiff did not suffer a personal injury") *disapproved of in part on other grounds by Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1058 (Colo. 1995).

prejudgment interest on damages for emotional distress caused by withholding insurance benefits for damage to a house must be awarded under personal injury statute). In this case, the economic damages flowing from the common law tort of wrongful termination in violation of public policy vindicates a public interest, *see Brown v. Premier Roofing, LLC,* 173 F. Supp. 3d 1181, 1185 (D. Colo. 2016), not a personal impairment.[2]

This conclusion is consistent with the type of damages Mr. Romero sought throughout this case. From the beginning, Plaintiff claimed he was entitled to his loss of earnings (back pay), loss of earning capacity (front pay), and loss of fringe benefits. *See* [#26 at 87]. He detailed the amount of economic damages he was due according to back pay, based on an annual wage of $73,828.92 (from the date of termination), and front pay, with the same annual wage multiplied by a work life expectancy of 14.7 years. [#26 at 7]. These damages are not, as suggested by Plaintiff, a loss of diminished earning and future business prospects, but the loss of income tied to his specific job as a motorman with H&P, or, in certain future scenarios, loss of income derived from another job with H&P as a safety man or forklift operator. *See, e.g.,* [#145-1]. Put another way, Mr. Romero sought as damages the wages he would have earned from H&P, either as a motorman or in another position. Indeed, the jury instructions Plaintiff offered described his damages as economic losses from lost back pay and front pay resulting from his termination, <u>not</u> as losses tied to diminished earning capacity or forgone future business

---

[2] Although not binding, this court finds the case of *Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418 (1993) instructive. Like Colorado, California has held that damages arising from an insurance bad faith action are associated with the recovery of a property right, not a personal injury. *Id.* at 1436; *Herod v. Colo. Farm Bureau Mut. Ins. Co.*, 928 P.2d 834, 838 (Colo. App. 1996). The California court in *Holmes* drew an analogy between a bad faith insurance action and a wrongful termination in violation of public policy action, and concluded that a wrongful termination in violation of public policy action "primarily involves the infringement of property rights, not personal injury," and "the nature of a tortious wrongful termination action is not to vindicate the plaintiff's personal interest, [but] [r]ather the essence of such claim is to vindicate the *public* interest." *Holmes*, 17 Cal. App.4th at 1436.

prospects. *See* [#90 at 9]. Plaintiff's proposed Jury Verdict Form reflects the same. *See* [#119 at 5]. Mr. Romero's claims of impairment to his mental or physical well-being are rather captured by his proposed instructions regarding noneconomic damages. *See* [*id.*; #90 at 9]. The testimony Mr. Romero and his wife provided at trial is consistent with Plaintiff's theory of damages: Mr. Romero intended to continue working at H&P but for his involuntary termination.

For these reasons, I find that § 13-21-101 is inapplicable to the economic damages awarded by the jury; and Mr. Romero is entitled to prejudgment interest on his economic damages at the rate of eight percent pursuant to § 5-12-102.

### 2.    Prejudgment Interest on Past Economic Damages Only

In concluding that § 5-12-102 governs the prejudgment interest on Plaintiff's economic damages, I find that the statute provides for prejudgment interest on loss of past income only. *See Shannon v. Colo. School of Mines*, 847 P.2d at 213. As the *Shannon* court discussed:

> [t]he plain language of [section 5–12–102] indicates ... that prejudgment interest is allowed only on past losses. Section 5–12–102 specifically awards interest on money which is due and owing prior to the date of payment or prior to the date judgment is entered.
>
> Thus, under § 5–12–102, interest may not be awarded on lost *future* wages and benefits because they are not due and owing prior to the entry of judgment. Simply put, since future wages are not due, there is no delay in the receipt of the money, and therefore, a plaintiff does not experience a loss on such earnings.
>
> Accordingly, under § 5–12–102, plaintiff is entitled to prejudgment interest only on the loss of income accrued as of the date of trial.

*Id.* As was the plaintiff in *Shannon*, Mr. Romero is entitled to prejudgment interest only on the loss of income accrued as of the date of trial. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1207 (Colo. App. 2009) (citing *Shannon v. Colo. School of Mines* with approval).

As the Parties note, the jury did not distinguish between past and future lost earnings in the damages award, and rather awarded a lump sum of $500,000 for "back pay, front pay, loss of

past fringe benefits, and loss of future fringe benefits."[3]  [#130, #134].  In the case of a general verdict, the district court must make findings regarding the entitlement to prejudgment interest, the rate of interest, and the date from which interest accrues.  *Lowell Staats Min. Co. Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989) (citing *Tripp v. Cotter Corp.,* 701 P.2d 124, 126 (Colo.App.1985).  *Accord Pierson v. United Bank,* 754 P.2d 431, 432 (Colo. App. 1988).  In *Shannon*, the court of appeals reviewed a similar lump sum award and advised that "the most accurate and reasonable indication of plaintiff's pre-trial wage loss is the amount of back pay plaintiff's expert computed."   847 P.2d at 214 (remanding for a computation of prejudgment interest based on expert's computation of past damages).  Following the guidance articulated by the *Shannon* court, I consider both experts' testimony of Plaintiff's past wages along any losses that accrued as of Plaintiff's termination on December 27, 2012, through the date of judgment, September 5, 2017, as well as the Parties' own representations.

### 3.    Damages Scenarios

To begin, Plaintiff's expert, Donald Frankenfeld, articulated four different potential damages scenarios.  [#145-1].  In Scenario 1, Mr. Frankenfeld calculated the past losses as $254,863, but assumed no surgeries.  [*Id.* at 3].  In Scenario 2, Mr. Frankenfeld calculated the past losses as $140,078, assuming a single surgery and a period of convalescence between August 30, 2013 and January 8, 2015.  [*Id.* at 4].  In Scenario 3, Mr. Frankenfeld calculated the past losses as $302,565, assuming a single surgery and a period of convalescence between March 26, 2015 and July 29, 2016.  [*Id.* at 5].  In Scenario 4, Mr. Frankenfeld calculated the past losses

---

[3]  Plaintiff argues that "it is important to note that Mr. Romero submitted a proposed verdict form that would have required the jury to differentiate between Mr. Romero's past economic losses and his future economic losses," [#152 at 8]; but Plaintiff did not argue any particular justification for the distinction, nor did he indicate that the distinction was necessary for the application of the appropriate interest rate.

as $52,114, assuming a single surgery and a period of convalescence between August 30, 2013 and January 8, 2015, and no wage loss thereafter. [*Id.* at 6]; *see* [#152 at 6 ("Scenario 4 of Mr. Frankenfeld's report [is] a scenario which only considered past losses and [for] which there were not future losses")].

H&P suggests that the court accept the back damages associated with Scenario 2, as the damages calculation therein bears the closest resemblance to the jury's damages award. *See* [#145 at 13]. Plaintiff contends that his past economic losses amount to at least $237,630. *See* [#152 at 8]. He argues that Mr. Frankenfeld's calculations already take into account his failure to mitigate, and that he will thus suffer "a double deduction" should the court "(1) use Mr. Frankenfeld's net past damages calculation, not gross, which already reduces for Mr. Romero's theoretical capacity to mitigate and (2) then further reduce by the jury's reduction due to failure to mitigate." [*Id.* at 9]. Ultimately, Mr. Romero requests that "[g]iven the number of different amounts, and resulting differences that will occur by applying section 13-21-101, C.R.S., or section 5-12-102, C.R.S….the Court allow him to provide a detailed interest calculation spreadsheet, like his Exhibits 1– 2, once the inputs to be used are ruled on by the Court." [*Id.* at 10 n.1].

There is no scenario in which Mr. Frankenfeld calculates Mr. Romero's net past wages as $237,630. Scenario 1 includes a past wages calculation of $354,441 gross, and $254,863 net. [#145-1 at 3]. But that scenario assumes that Mr. Romero underwent no surgeries, continued to work as a motorman his entire career, and mitigated at a rate of $15.00 per hour. This court respectfully rejects Scenario 1 because the assumptions are simply not supported by the facts in the record. In Scenario 3, Mr. Frankenfeld calculates a past economic damage amount of $302,565 net, which relies on an assumption that Mr. Romero deferred his shoulder surgery until

March 26, 2015, and convalesced until July 29, 2016. [#145-1 at 5]. But again, these assumptions do not match the evidence at trial; the record before the court indicates that Mr. Romero elected to have a first surgery in August 30, 2013, and a second, more invasive surgery in March 2014. Scenario 2 assumes that Mr. Romero continued working as a motorman until August 30, 2013, when he had his first surgery, and convalesced until January 8, 2015. [*Id.* at 4]. The assumptions reflected in Scenario 2 match the evidence in the record. In addition, the total amount of lump sum damages in Scenario 2 totals $494,635, an amount similar to the jury's award of $500,000 economic damages and $480,000 with mitigation. Accordingly, the court finds that the past economic damages calculated in Scenario 2 are the most consistent with the lump sum amount awarded on the Jury Verdict Form and most consistent with the factual record as to Mr. Romero's medical treatments and resulting physical conditions.

### i. *Mitigation*

The court now turns to whether it should use the gross amount of $237,630, (calculated by adding the gross amounts of wages and fringe benefits from Scenario 2) or the net amount of $140,078. The court agrees that Mr. Frankenfeld's calculation in Scenario 2 appears to account for mitigation, but does not find that the presence of mitigation is dispositive of the issue. Because the jury's award aligns closest with the net value of Scenario 2, I find that $140,078 is the most appropriate value. Indeed, I perceive no persuasive justification to accept $237,630 as the gross value of back wages, which leaves a balance of $262,370 for gross future loss, because this outcome does not square with the calculation of $667,176 as gross future earnings in Scenario 2, or with any other scenario of gross future losses offered by Mr. Frankenfeld. *See* [#145-1]. However, a slight difference of $5,365 exists between the $500,000 of economic damages awarded by the jury and the $494,635 lump sum value reflected in Scenario 2. There is

no indication or guidance as to whether the court should allocate this difference to back pay or front pay, and thus the court simply assigns an approximate *pro rata* share of $1,677, calculated from Mr. Romero's work life expectancy of 62, as reflected in Scenario 2, and taking into consideration the passing of approximately sixteen years from the date of his termination. Accordingly, this court finds that the value for back damages is $121,755: the sum of $140,078 reduced by the $20,000 mitigation award, which Plaintiff concedes should be applied to back pay damages, *see* [#152 at 8-9], plus the approximate *pro rata* share of the difference between the jury award and Scenario 2.

### ii.      *Interest*

Finally, H&P asserts that Mr. Frankenfeld's Scenario 2 calculation of $140,078 includes interest and asks the court to parse the award so as to preclude double recovery by Plaintiff. *See* [#145 at 13]. However, Mr. Frankenfeld states in the commentary to his models that the "[p]rior losses…are not adjusted for time value." [#145-1 at 8]. And, Plaintiff argues in his Reply that "while Mr. Frankenfeld utilized both an inflation rate and a growth rate in Scenarios 1–3 of his report he applied inflation and a growth rate only to his calculation of future economic losses from the date the trial ended going forward." [#152 at 6]. Accordingly, I am persuaded that awarding prejudgment interest on Plaintiff's past economic damages will not result in a double recovery.

I find that the proper prejudgment interest award is approximately $54,000: 8 percent on the value of back damages, $121,755, compounded annually from December 27, 2012 until September 5, 2017. The Parties are directed to meet and confer with respect to the precise amount of prejudgment interest and to file a Notice with the appropriate calculation with the court no later than December 7, 2017.

## II.    Motion to Stay

H&P asks the court to stay enforcement of the judgment pending resolution of its Motion for a New Trial and any associated appeal to the Tenth Circuit Court of Appeals, and to accept a security bond in the amount of $725,000. Defendant recognizes that application of Rule 62(d) is premature at this time, as it has not yet filed a notice of appeal, but, "[i]n an effort to streamline the bonding process in this action," asks that the court approve the proposed bond amount "both as appropriate security under Fed. R. Civ. P. 62(b) and as sufficient for any appellate proceedings that may or may not be necessary under Fed. R. Civ. P. 62(d)." [#139 at 2 n.1]. Plaintiff agrees "that it is preferable to avoid multiple bond approval motions if possible," but generally opposes the Motion and asserts that $725,000 is insufficient security. Plaintiff asks that the court, should it grant the Motion, require H&P to post a bond in the amount of $1,079,651.41, which is 125 percent of the judgment including the amounts of prejudgment and postjudgment interest that Plaintiff advocates the court should apply. *See* [#161]. In reply, Defendant asserts that $725,000 is more than adequate, and that Plaintiff provides no sound legal basis for requiring Defendant to post a greater bond. [#148].

### A.    Fed. R. Civ. P. 62(b)

Rule 62 governs the stay of proceedings to enforce a judgment, and provides that the court may stay the execution of a judgment pending disposition of a motion made under Fed. R. Civ. P. 59 "on appropriate terms for the opposing party's security." Fed. R. Civ. P. 62(b). "Rule 62(b) is intended to preserve the status quo while protecting the prevailing party's interest in the judgment." *Gen. Steel Domestic Sales, LLC v. Chumley*, 10-cv-1398-PAB-KLM, 2013 WL 2634640, at *1 (D. Colo. June 12, 2013) (citing *Peacock v. Thomas,* 516 U.S. 349, 359 n.8 (1996) ("The district court may only stay execution of the judgment pending the disposition of

certain post-trial motions ... if the court provides for the security of the judgment creditor.")).

When a court orders that a bond is required, the court has discretion to determine the value

necessary to secure a stay pursuant to Rule 62(b). *Id.* (noting that in contrast to a stay pending

appeal, courts enjoy greater discretion to determine the sum necessary to secure a stay pursuant

to Rule 62(b)). Generally, the bond amount equals the "full amount of the judgment, though the

district court has discretion in setting the amount." *Strong v. Laubach*, 443 F.3d 1297, 1299

(10th Cir. 1996).

H&P has offered a bond in the amount of 125 percent of the damages that the jury

awarded Plaintiff. I find that this is sufficient, even in light of the interest calculations as set

forth above. The jury's total award was $480,000. The court then estimates prejudgment

interest at approximately $54,000, using the formula as discussed above. The bond H&P

proposes is more than sufficient for the purpose of staying this matter under Rule 62(b).

Therefore, I decline to require a greater bond, and I will GRANT the Motion to Stay with respect

to the Rule 62(b) relief that H&P requests. *See Ireland v. Dodson*, 2009 WL 1559784, at *1 (D.

Kan. May 29, 2009) (finding that a bond in the amount that jury awarded, excluding fees and

costs, was sufficient to secure judgment creditor's interests during pendency of motion for new

trial).

**B.      Fed. R. Civ. P. 62(d)**

Rule 62 also provides that, where an appeal is taken, the appellant may obtain a stay by

supersedeas bond, with exceptions not relevant here, and the bond "may be given upon or after

filing the notice of appeal or after obtaining the order allowing the appeal." Fed. R. Civ. P. at

62(d). A bond filed under Rule 62(d) "is designed to protect the successful litigant and to secure

the judgment against insolvency of the judgment debtor." *Stockmar v. Colo. Sch. Of Traditional*

*Chinese Med., Inc*., No. 13-cv-02906-CMA-MJW, 2015 WL 4456207, at *1 (D. Colo. July 21, 2015) (approving a supersedeas bond "covering the full amount of the judgment") (citing *Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006)). As with Rule 62(b), the court has discretion in setting the amount of the supersedeas bond, and may waive the requirement of a bond or reduce the amount of the bond to prevent irreparable harm to the judgment debtor. *Id.* (citing *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986)). However, "a full supersedeas bond should be the requirement in normal circumstances." *Miami Int'l Realty Co.*, 807 F.2d at 873 (citations omitted). *See* 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2905 (3d. ed.) ("the amount of the bond usually will be set in an amount that will permit satisfaction of the judgment in full, together with costs, interest, and damages for delay.")).

Though neither Party has yet to file a Notice of Appeal in this matter, both Parties agree that in the interest of efficiency, it is appropriate for the court to consider this issue now. Thus, the court turns to analyzing whether the $725,000 bond would cover the total amount due to Plaintiff pending appeal. *See Stockmar*, 2015 WL 4456207, at *2 (citing *Tennille v. West Union Co.*, 774 F.3d 1249 (10th Cir. 2014)). *See also U.S. ex rel Sun Coast Co., Inc. v. Torix General Contractors, LLC*, No. 07–cv–01355–LTB–MJW, 2011 WL 2182897 (D. Colo. Jun. 6, 2011) ("The purpose of a supersedeas bond is to secure an appellee from loss resulting from the stay of execution, and a full supersedeas bond should be the requirement in normal circumstances") (citing *Miami Int'l Realty Co*, 807 F.2d at 873). As discussed above, the jury's total award was $480,000, and the court estimates prejudgment interest at approximately $54,000. The Parties agree that Plaintiff is entitled to postjudgment interest at a rate of 1.23 percent a year, meaning that the judgment would accrue $7,134 in the first year. [#139 at 3]. And the Clerk of the Court

has taxed costs in the amount of $12,272.22 against Defendant.  *See* [#155].  These sums are accounted for in the proposed supersedeas bond.  For these reasons, the court finds that it is appropriate to GRANT the Motion to Stay, and ORDERS Defendant to tender $725,000 to the court registry as a supersedeas bond pending appeal.

## III.    Motion for a New Trial

Finally, the court addresses Defendant's Motion for a New Trial.  Federal Rule of Civil Procedure 59(a) provides that the court may, on motion, grant a new trial on all or some issues to any party following a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  H&P takes issue with the jury's response to two questions on the Special Verdict Form.  Question 3 and 4 asked, and provided specific instruction, as follows:

> 3.  Did defendant actually discharge the plaintiff because the plaintiff exercised his right as a worker to file a worker's compensation claim for loss wage benefits?
>
> IF YOUR ANSWER IS YES, YOU HAVE REACHED A VERDICT IN FAVOR OF PLAINITFF.  PLEASE PROCEED TO QUESTION 5.
> IF YOUR ANSWER IS NO, PLEASE PROCEED TO QUESTION 4.
>
>
> 4.  Did defendant constructively discharge the plaintiff because the plaintiff exercised his right as a worker to file a worker's compensation claim for loss wage benefits?
>
> IF YOUR ANSWER IS YES, YOU HAVE REACHED A VERDICT IN FAVOR OF PLAINITFF.  PLEASE PROCEED TO QUESTION 5.
> IF YOUR ANSWER IS NO, YOU HAVE REACHED A VERDICT IN FAVOR OF DEFENDANT.  PLEASE SIGN AND DATE THE SPECIAL VERDICT FORM.

[#134 at 2].  The jury answered YES to both Questions 3 and 4.  H&P argues that the jury's answers are irreconcilably inconsistent in that they find that Plaintiff both quit his job and was fired, and that the irreconcilable inconsistency demonstrates that the jury not only failed to

follow its instructions but was confused and/or failed to properly perform its function. [#146 at 2-3]. Mr. Romero argues that the two answers are not inconsistent and, to the extent the court finds otherwise, the inconsistency "has no effect on the outcome of the case," because "it is clear that the jury rejected…H&P's argument that Mr. Romero voluntarily quit his job." [#158 at 3].[4]

Whether to order a new trial is within the trial court's discretion, and such decision will be reversed only where "the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Weese v. Schukman,* 98 F.3d 542, 549 (10th Cir. 1996). "When reviewing claims that a jury verdict is inconsistent, we must accept any reasonable view of the case that makes the jury's answers consistent." *Heno v. Sprint Mgmt. Co.*, 208 F.3d 847, 852 (10th Cir. 2000) (quoting *Patton v. TIC United Corp.,* 77 F.3d 1235, 1241 (10th Cir. 1996)). Indeed, "[i]f there is any plausible theory that supports the verdict, the reviewing court must affirm the judgment." *Johnson v. Ablt Trucking Co., Inc.*, 412 F.3d 1138, 1144 (10th Cir. 2005). However, "[i]f the jury's answers are inconsistent with each other even when the trial judge views them in the most generous way to avoid such a conclusion, a new trial ... ordinarily is required." *Id.* (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2510 at 207 (West 1995)).

---

[4] In its Response, Plaintiff asserts that H&P waived its right to object to inconsistent jury verdicts by not raising the issue before the jury was discharged. [*Id.*] However, as H&P asserts, the requirement that it object prior to the court discharging the jury pertains only to a general verdict, which is one that "requires the jury to announce the 'ultimate legal result of each claim.'" *Johnson v. Ablt Trucking Co., Inc.,* 412 F.3d 1138, 1142 (10th Cir. 2005). The jury here was presented with special verdict forms, *see* [#134], which ask specific questions of fact regarding fault and damages. *Id. See Heno v. Sprint Mgmt. Co.*, 208 F.3d 847, 851-52 (10th Cir. 2000) ("[W]hen the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court.") (quoting *Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932, 944 (10th Cir. 1994)). *Accord Bonin v. Tour W., Inc.,* 896 F.2d 1260, 1263 (10th Cir. 1990).

The crux of Defendant's argument is that because the jury applied two mutually exclusive legal theories in finding for Plaintiff on an element of his claim, the jury must have been confused overall in its findings of fact and application of law. Defendant asserts, and the court agrees, that the legal theory of constructive discharge requires, among other things, that the employee opted to resign. The court likewise acknowledges that, when viewed within the context of the legal theory of constructive discharge, the jury's response in the affirmative as to Question 3 directly conflicts with its response in the affirmative as to Question 4. The court also acknowledges that the jury's finding that Plaintiff was constructively discharged is in direct conflict with Mr. Romero's consistent position that he did not quit or resign. However, the court has an obligation to reconcile inconsistent verdicts, *Jarvis v. Commercial Union Assurance Companies*, 823 F.2d 392, 395 (10th Cir. 1987), and I find that reconciliation is possible and even intuitive here.

"To be irreconcilably inconsistent, the jury's answers must be 'logically incompatible, thereby indicating that the jury was confused or abused its power.'" *Johnson*, 412 F.3d at 1144 (citation omitted). Although the answers to Questions 3 and 4 appear at odds with respect to the *legal* theories of termination advanced, they are *logically* consistent in their reflection of the jury's determination that Mr. Romero did not leave his employment voluntarily. A claim for wrongful discharge in violation of public policy requires, among other things, that the employer discharge the employee from his or her position. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992). Mr. Romero testified that he did not willingly resign. The jury's answers to Questions 3 and 4 reflect that it concluded that Mr. Romero involuntarily left the employment of H&P, either because Donald Stevison, his supervisor, affirmatively terminated him by telling him to "pack his [expletive]," or because Mr. Romero perceived after Mr. Stevison's statement

that the conditions of his employment had become intolerable such that he felt compelled to leave. "A verdict is irreconcilably inconsistent only when 'the essential controlling findings are in conflict, the jury has failed utterly to perform its function of determining the facts, and its verdict is a nullity.'" *Johnson*, 412 F.3d at 1144 (citations omitted). Here, by contrast, the answers to Questions 3 and 4 are in harmony with respect to the controlling finding that Mr. Romero did not voluntarily leave his motorman position.[5]

Furthermore, the jury's findings with respect to either question did not necessitate subsequent contradictory findings. In other words, the only questions that remained queried the jury as to Plaintiff's damages and whether his damages should be reduced as a result of failure to mitigate. *See* [#134 at 2-3]. The jury's deliberation regarding Plaintiff's damages was not affected by the nature of the involuntary termination, i.e., the damages award was not thereafter impacted by whether Plaintiff was fired or whether he was constructively discharged.

Accordingly, while the jury verdict demonstrates some level of confusion on the part of the jurors because the instructions clearly advise that the jury answer Question 3 *or* Question 4, but not both, I do not find that this perceived confusion produced irreconcilable answers or affected the outcome of the verdict. Rather, the confusion is likely a result of differing opinions on how to classify the involuntary termination pursuant to a specific legal theory. In any event,

---

[5] Indeed, irreconcilably inconsistent verdicts on the facts of this case would be a finding on one hand that Mr. Romero's employment came to an involuntary end and a finding on the other that Defendant did not cause Mr. Romero's termination. *Cf. Bonin*, 896 F.2d at 1263 (remanding action for new trial where jury answered in special verdict forms that plaintiffs were liable for "accident which injured plaintiff[s]," and defendant was partially liable for "accident which caused the injuries to [plaintiff]," holding that the language of those questions was too similar "to hold that the jury's answers to those questions distinguish between negligence that caused the accident and negligence that caused the injuries"); *Danner v. Int'l Med. Mktg., Inc.*, 944 F.2d 791, 793-94 (10th Cir. 1991) (remanding action for new trial where, under the jury instructions, plaintiff had to show that defendant defaulted on note in order to prevail, and defendant had to prove it did not default on note in order to prevail on counterclaim, and jury found for both parties).

the jury found for Mr. Romero on that element of his claim, which the answers to Questions 3 and 4 reflect, and I find that a new trial is not warranted.

## CONCLUSION

For the reasons stated herein **IT IS ORDERED** that:

1. Plaintiff's Motion Regarding Interest [#138] is **GRANTED IN PART and DENIED IN PART**;

2. The Parties will meet and confer and **SUBMIT** a Joint Notice of Prejudgment Interest based on the formula set forth in this Memorandum Opinion and Order no later than **December 7, 2017**;

3. Plaintiff shall be awarded postjudgment interest at a rate of 1.23 percent;

4. Defendant's Motion to Stay [#139] is **GRANTED** pursuant to Fed. R. Civ. P. 62(b) in the interim and Fed. R. Civ. P. 62(d) upon the filing of a Notice of Appeal;

5. The initial stay under Fed. R. Civ. P. 62(b) will last until such time as Defendant files its Notice of Appeal, at which point further stay will become proper under Fed. R. Civ. P. 62(d);

6. The court hereby APPROVES of Defendant's supersedeas bond, and DIRECTS Defendant to post a supersedeas bond in the amount of $725,000 with the Clerk of the Court no later than **December 14, 2017**; and

7. Defendant's Motion for New Trial [#146] is **DENIED**.


DATED:  November 30, 2017                         BY THE COURT:


                                                  s/ Nina Y. Wang
                                                  United States Magistrate Judge